```
               UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF KENTUCKY
                    CENTRAL DIVISION
                  FRANKFORT, KENTUCKY

UNITED STATES OF AMERICA,      ) Frankfort Criminal
                               ) Action No. 16-06
        Plaintiff,             )
                               ) At Lexington, Kentucky
-vs-                           )
                               ) September 29, 2016
TIMOTHY M. LONGMEYER,          ) 2:00 p.m.
                               )
        Defendant.             )
```

       TRANSCRIPT OF THE SENTENCING HEARING PROCEEDINGS
            BEFORE THE HONORABLE KAREN K. CALDWELL
              UNITED STATES DISTRICT CHIEF JUDGE

Appearances of Counsel:

On behalf of Plaintiff:     ANDREW T. BOONE, ESQ.
                            KATHRYN ANDERSON, ESQ.
                            KERRY B. HARVEY, ESQ.
                            CARLTON SEELYE SHIER, IV
                            U.S. ATTORNEY'S OFFICE
                            260 West Vine Street
                            Suite 300
                            Lexington, Kentucky  40507

On behalf of Defendant:     BRIAN BUTLER, ESQ.
                            Dathorne & Butler
                            600 West Main Street
                            Suite 500
                            Louisville, Kentucky  40202

-and-                       R. KENYON MEYER, ESQ.
                            Dinsmore & Shohl LLP
                            101 South Fifth Street
                            Suite 2500
                            Louisville, Kentucky  40202

Court Reporter:             PEGGY W. WEBER, RPR
                            Official Court Reporter
                            U.S. District Court
                            P.O. Box 362
                            Lexington, Kentucky  40588
                            (859) 421-0814

Proceedings recorded by mechanical stenography,
transcript produced by computer.

1      (Whereupon, the Sentencing Hearing proceedings

2  commenced on Thursday, September 29, 2016, at 2:00 p.m.,

3  on the record in open court, as follows.)

4           THE COURT:  Will the clerk please call the

5  matter to come before the Court?

6           THE CLERK:  Yes, Your Honor.

7           Frankfort Criminal Action Number 16-6,

8  United States of America versus Timothy M. Longmeyer,

9  called for sentencing.

10           THE COURT:  Will the United States make its

11  appearance for the record?

12           MR. BOONE:  Good afternoon, Your Honor.

13           Andy Boone for the United States.  With me here

14  today is Kerry Harvey, Carlton Shier, and Kate Anderson.

15           MS. ANDERSON:  Good afternoon, Your Honor.

16           THE COURT:  Counsel, good afternoon.

17           For the defense?

18           MR. BUTLER:  Good afternoon, Your Honor.

19           Brian Butler, Kenyon Meyer on behalf of

20  Tim Longmeyer.  He's present at counsel table,

21  Your Honor.

22           THE COURT:  Mr. Butler, Mr. Meyer,

23  Mr. Longmeyer.

24           MR. MEYER:  Good afternoon, Your Honor.

25           THE COURT:  This matter is called on for a

1   sentencing hearing.

2            Has the United States received a presentence

3   report and all related addenda?

4            MR. BOONE:  Yes, Your Honor.

5            THE COURT:  I note that there were objections

6   filed by the United States, but I see that they were

7   resolved by the probation officer.

8            Is that correct, Mr. Boone?

9            MR. BOONE:  It is, Your Honor.

10           THE COURT:  Are there any additional objections

11  you would bring to my attention today?

12           MR. BOONE:  There are no other issues to take

13  up with respect to the PSR.

14           THE COURT:  Very well.

15           Mr. Butler, have you and your client received

16  and reviewed the presentence report and all related

17  materials?

18           MR. BUTLER:  Yes, ma'am.

19           THE COURT:  I note that there were some

20  objections you had filed, but that they were also

21  resolved by the probation office.

22           Is that correct?

23           MR. BUTLER:  Yes, ma'am, it is.

24           THE COURT:  Are there any additional objections

25  you would bring to my attention today?

1          MR. BUTLER:  No, Your Honor.  We would accept
2  the PSI as it is now, ma'am.
3          THE COURT:  Very well.  The Court will adopt
4  the factual findings and the advisory guideline
5  applications that are set forth in the presentence
6  report.
7          Accordingly, the Court determines that the
8  appropriate advisory guideline range for this defendant
9  is from 70 to 87 months, based on a total offense level
10  of 27, and a criminal history category of I.
11          There are no remaining counts to dismiss.  This
12  was a plea to an information.
13          Is that correct; Mr. Boone?
14          MR. BOONE:  Correct, Your Honor.
15          THE COURT:  All right.  I have received a
16  motion from the United States.
17          Would the parties like to approach regarding
18  that motion?
19          MR. BOONE:  Yes, Your Honor.
20          THE COURT:  You may.
21     (Whereupon, a SEALED bench conference was had with
22  the Court and Counsel, on the record, out of the hearing
23  of the open court, and is under seal until further orders
24  of the Court; and the Sentencing Hearing proceedings
25  continued on the record in open court, as follows.)

1              THE COURT:  The Court will note for the record

2    that it has received a victim impact statement submitted

3    on behalf of the employees of the Kentucky Personnel

4    Cabinet.

5              Are there any other victim impact statements

6    that the United States has to present -- present to the

7    Court?

8              MR. BOONE:  No, Your Honor.

9              THE COURT:  Very well.  The Court has received

10   the sentencing memorandum filed on behalf of the defense.

11   I have read it and will be hearing further from the

12   defense in a moment.

13             I have also received more than 100 pages of

14   letters in support of this defendant, and I have reviewed

15   them, and I will give them appropriate weight.

16             Mr. Longmeyer, I'm going to hear from the

17   lawyers in just a minute, but if you'd like to speak to

18   the Court to aid in determining your sentence, I'm happy

19   to hear from you now.  And you can remain seated.  I

20   might be able to hear you better if you speak into that

21   microphone.

22             Thank you, sir.

23             DEFENDANT LONGMEYER:  Thank you, Your Honor.

24             First, I want to truly apologize to the Court

25   and the Commonwealth, my family, as well as the employees

1  of state government, members of the health plan, for my

2  misdeeds, as to -- as well as to the FBI and

3  U.S. Attorney who has -- and the Court that had to spend

4  valuable time on this matter, as opposed to many of the

5  other very important matters that they are following.

6           There is no excuse for my actions.  The

7  reasoning was my own, and I failed to follow my own moral

8  compass, and for that I'm deeply ashamed.

9           To the employees of state government,

10  particularly the ones that would go home every night very

11  proud of the job they did over a number of years, and

12  they are a tremendous impact, positive impact, they had

13  on the lives of others.  I am -- I horribly regret that I

14  have diminished those memories and that pride by my

15  actions.

16           To all the people that worked with me and for

17  whom I've worked for, the great trust they put in me, as

18  well as that of the people of the Commonwealth, I did not

19  treat that trust ultimately with respect.

20           As to my family, I've let them down

21  tremendously and cost them more than I could -- I could

22  ever sum up, and I apologize to them deeply.

23           And my one request to the Court and pray for

24  consideration of -- even though the fault is entirely on

25  my own -- the impact of the sentence on my wife and

1    children, who I have already punished and who are

2    absolutely blameless.

3          And I thank the Court for this time and deeply

4    apologize for my actions.

5          Thank you, Your Honor.

6          THE COURT:  Thank you very much.

7          Mr. Butler, Mr. Meyer?

8          MR. BUTLER:  Thank you, Your Honor.

9          Is it okay if I use the podium, Your Honor?

10          THE COURT:  You may.  Wherever you're most

11   comfortable.  The acoustics in this room are terrible

12   though so stay close to a microphone.

13          MR. BUTLER:  Obviously, Your Honor, this is an

14   extremely sad case, sad for all of us.

15          And you have a difficult job because I'm

16   certain that Mr. Boone will stand up here, and he will be

17   right when he says it, that the citizens of the

18   Commonwealth of Kentucky have a right to trust in their

19   government.

20          We live in a society, which unfortunately,

21   doesn't have a lot of trust in their government, and

22   Mr. Longmeyer's actions certainly won't help that trust.

23          But that's why we have sentencing hearings, and

24   that's why we have 3553 because you have the difficult

25   job of balancing what is clearly a wrong, with looking at

1   Mr. Longmeyer's history and his characteristics in his

2   whole life in trying to fashion a sentence that is not

3   greater than necessary.

4           I won't repeat everything that I've written,

5   but I do think it's important to highlight some of the

6   things that I think mitigate against his crime.

7           Number one, I -- I don't think he's the typical

8   public corruption defendant.  And I say that because so

9   many people that we find in public corruption really

10  don't have a great deal that they contributed to the

11  public, good to balance against the wrong that they did,

12  and Mr. Longmeyer's case that is clearly not true.

13          Mr. Longmeyer has a history of public service

14  that if we weren't here today, we would probably put up

15  against anyone.  He, in Jefferson County, prosecuted

16  child abuse and neglect cases for years.  As I'm sure the

17  Court is familiar, these are probably the toughest cases

18  anyone can handle.  If you were there, they are the kinds

19  of cases that you take home at night.  You see and you

20  live with the worstest humanity has to offer, the abuse

21  of children.

22          Judge Fitzgerald wrote a letter, and I'm not

23  going to cite everything in every one of these letters,

24  but a few of these comments I think are particularly

25  appropriate.

1          He described Tim as emphatic to the needs of

2   children and families and Courts.  The good he did there

3   is more than most will ever do in their life.  He

4   developed, when he was in Jefferson County, the

5   Secret Safe Haven Program, which allowed women that had

6   children that they did not want, a place to take those

7   children within a certain amount of time with no

8   questions asked so those children would have a chance at

9   a life.

10          That wasn't an easy thing to do.  We take that

11   for granted now.  At the time he had to coordinate

12   between law enforcement, the hospitals, the Commonwealth

13   attorney's Office, the county attorney's office.

14          And what he did was such a success it became

15   state law here in Kentucky, and something that's well

16   accepted now.  But at the time it was -- it was Tim that

17   did that.

18          I can't speak for Fayette County, but in

19   Jefferson County we have a tremendous attendance problem.

20   Our public schools repeatedly get failing marks.  Tim was

21   instrumental in developing a truancy program in Jefferson

22   County.  He didn't do it for the vast recognition.  He

23   did it because it was a need, and he led to the highest

24   school attendance that we've had in Jefferson County.

25   Again, that was Tim.

 1                We had unfortunately enough child deaths in

 2    Louisville that we had a child fatality review team.

 3    It's a team that's made up of prosecutors.  It's made up

 4    of medical examiners.  It's made up of forensic nurses.

 5    It's made up of people of all different specialties that

 6    come together, and they review and analyze these cases.

 7    It is considered a significant honor.  And I don't say

 8    honor like it's -- you put it on the wall, but it's the

 9    best of the best are the ones that get invited to be a

10    part of this committee.  And Tim was and participated in

11    examining and solving many of the child deaths in

12    Jefferson County during the time he was in the

13    Commonwealth Attorney's office.

14                Unfortunately, like so many communities,

15    Louisville is and has been plagued with a drug epidemic.

16    We were one of the first courts of the country to

17    establish a drug court and family court.  Tim was heavily

18    involved in that, and I think this is important.  This

19    wasn't part of his job.  He didn't have to do that, but

20    he volunteered a significant amount of time away from his

21    family and away from his personal life to help those that

22    needed his help the most.

23                His career as a prosecutor was exemplary,

24    period.

25                He became -- went to the personnel cabinet --

1   and nothing I'm going to say about his achievements is
2   meant to diminish the fact of what he did, but I do think
3   it's important to talk about what he did.

4          When he took over the employee healthcare plan,
5   it was -- was -- there was problems.  His -- he was
6   instrumental.  In fact, he did so well that state
7   employees got to skip a premium in December of 2008.

8          In 2009, $50 million was returned to the
9   general fund based upon changes that he worked with
10  others to recommend and implement within his cabinet.

11         In 2014 $93 million was returned to the general
12  fund based upon their work and the changes that he made.

13         $63.5 million was returned in 2015.

14         By the time he left, there was a $500 million
15  surplus that Governor Bevins has to work with as he tries
16  to deal with many of financial problems this state has.

17         If we weren't here today and this had never
18  happened, one could make a strong argument that
19  Tim Longmeyer was the best personnel cabinet secretary
20  we've ever had in the Commonwealth of Kentucky.

21         His positive contributions to the people in
22  this state are almost immeasurable.  Doesn't excuse what
23  he did.  I'm not saying it for that reason, but under
24  3553 we have to look at the whole person, and his work
25  history is really second to none.

1           He worked with the Kentucky Retirement System

2    Board, which as this Court knows has had tremendous

3    problems that were unfunded mandates.  Changes he made

4    and helped push through to go to Medicare Advantage led

5    to a $2.5 billion toward that unfunded mandate into the

6    future.  That is a significant contribution for all of

7    Kentucky's retirees.

8           He had the honor of heading the Kentucky

9    Employee's Charitable Contribution Committee.  During his

10   time Kentucky employees contributed over a million

11   dollars to their favorite charities.

12          The point I'm making with this is -- hopefully,

13   is Tim didn't do these positions as a prosecutor or as a

14   personnel cabinet.  He wasn't some political hack that

15   got put in there that literally did nothing and wasn't

16   trying to help the citizens of the Commonwealth.  He

17   didn't take these jobs just to enrich himself.  He did

18   amazing work, and unfortunately he ultimately succumbed

19   to temptation and made a tragic mistake to his own

20   detriment and the detriment of his family.  And he

21   understands and he knows he's going to be punished for

22   that.

23          But on the whole when we balance, as Congress

24   has said under 3553, and we have to consider his personal

25   history and his characteristics.  No one is going to come

1    before the Court with anymore accomplishments than

2    Mr. Longmeyer.

3            Also along the lines of 3553 and his personal

4    history and characteristics is, of course, he has no --

5    he has no criminal history.

6            He's also made significant political

7    contributions.  Whatever one's party is or whatever one

8    believes in the political system, we all admire those

9    that do the hard work that these politics go.  And that

10   was Tim.  He was the Jefferson County party chairman for

11   the democratic party, which I'm certain is a difficult

12   job because that's -- there's not a lot of money in the

13   local party chairs.  They're the ones that have to go to

14   all the bad chicken dinners.  They're the ones that have

15   to take all the calls.  They do the hard work that is

16   part of a democracy.

17           I thought two of the letters that I tried to

18   cite from along these political contribution lines were

19   particularly enlightening.

20           Patrick Bouldin, who is a well-respected

21   federal defender in the Western District.  He wrote, "Tim

22   didn't seek the limelight."

23           Marc Murphy is also a well-respected lawyer in

24   Kentucky.  "He did the unglamorous, unnoticed work."

25           This is somebody that worked well into many

1   nights, well through many weekends because he believed he

2   was doing something that was good for the party and the

3   people of the Commonwealth of Kentucky.

4           I think you also learn a lot about a person,

5   Your Honor, and why -- how we consider 3553 when you look

6   at someone's personal life.  Seventeen years married, he

7   has -- he has four children.  As the Court said, over

8   100 pages in letters in support.  His family support is

9   second to none.

10          And I think it's important that every one of

11  those people, no one said, oh, he's -- Tim is getting a

12  raw deal.  Tim, it's not fair.  Every one of those people

13  are good, decent citizens that are -- that know what Tim

14  did was wrong.  They accept it.  They know he is going to

15  be punished, and they know he deserves punishment.  But

16  what they hopefully tried to do is give you the

17  perspective that reading the PSI and the offense conduct

18  you see something beyond that than the person that you're

19  dealing with.

20          The types of things that I gathered from those

21  is, is he is an extraordinary father, that he's a loving

22  father, that he did everything he possibly could for his

23  children to be there for them, that he was a considerate

24  and thoughtful friend, that he was active in his parish

25  and it was a parish school.

1          I thought it said a lot about Tim in whether

2    he's going to go forward from this incident and how he's

3    going to go forward.  One of the letters, one of the

4    parishioners talked about the fact that after all this

5    broke in the news in Louisville, that Tim was at mass

6    lecturing.  I mean, he didn't run from this.  He took

7    responsibility for it, and he has tried to be the best

8    person he can.

9          Again, his -- his personal life doesn't

10   override and doesn't excuse his crime, but I think it

11   does prove that you have a good, decent man in front of

12   you who made a bad mistake.

13         So then we get down to what's sufficient but

14   not greater than necessary to balance these things out.

15   And I think when you consider that, you also have to

16   consider Tim's conduct immediately upon finding out about

17   this investigation.

18         While it is commendable for any defendant to

19   come to Court in a timely manner and plead guilty and

20   save the government time and resources, it is

21   extraordinary for an individual to be approached in the

22   morning by the FBI and in the afternoon willingly

23   accompany the FBI, along with an attorney and meet with

24   the United States and fully and completely tell them what

25   he had done wrong.

1           When we talk about acceptance of

2  responsibility, this is an entirely different level than

3  most of us are accustomed to seeing.  It is extremely

4  rare for that level of responsibility.

5           Literally on the first day that he learned of

6  this, he was willing to come to court and take

7  responsibility whenever that was appropriate, and on the

8  day it was appropriate he entered a plea of guilty by

9  information.

10          When we balance the violation of the public

11 trust, we also have to look, I think, in fashioning a

12 fair sentence as to what else besides this Court's

13 sentence is Mr. Longmeyer going to suffer?  In his case

14 it's significant.  He was a well-respected member of the

15 bar.  He will not practice law anymore.

16          If the Court may recall, and I know you have

17 many cases, and I think this sort of sums Tim up because

18 he thought of this on his own.  It would have never even

19 crossed my mind.  But the time that we were in court for

20 his information plea, prior to entering the plea he

21 leaned over and tapped me on the shoulder, Your Honor,

22 and asked me to address Your Honor and asked me to make

23 an oral motion to remove him from the list of attorneys

24 for the Eastern District for fear of disrespecting the

25 Court and other members of the bar.

1          He's lost his profession.  Unlike so many if
2    you're a carpenter or a plumber and do something wrong,
3    you may be able to go back and do that trade again.  He
4    will not be a lawyer again.
5          He will be a convicted felon for the rest of
6    his life.  He will never be in a position, not that he
7    would ever do this again, but he will never be in a
8    position to do this again because he will never be
9    employed in a government position.  He will never have
10   the position of trust from the citizens of the community.
11         And I suspect if we could all ask Tim over a
12   cup of coffee, without everyone looking, what the worst
13   of it all is, it would be the humiliation that he and his
14   family have suffered, looking his children in the eyes
15   and telling them that what everyone else said was the
16   perfect dad, maybe he wasn't perfect afterall.  That the
17   parishioner that they all loved, maybe he wasn't as
18   perfect as they thought.  You can't get worse than that,
19   I don't think.
20         I think we have to also take into account under
21   3553 when we're trying to fix a fair sentence, as Tim
22   said, what are the collateral consequences to his family.
23   Just -- and in this case he's going to have four children
24   with a mother that was a stay-at-home mother that has
25   gone back to work, and that's going to be difficult.  I

1   don't say that to pull heart strings, but that's just a

2   fact.

3             And in the balance I would hope the Court will

4   consider the family and the impact on them when affixing

5   a sentence.

6             Finally, Tim owes 203 some thousand dollars in

7   restitution.  The reason that's listed as part of 3553

8   is, is obviously it's very difficult to pay restitution

9   when a person is incarcerated.  So the quicker he can get

10  out and get back to work, the quicker he can repay the

11  debt that he owes to the Commonwealth of Kentucky.

12            Along that same line, and hopefully continuing

13  to show the good faith that I believe he has demonstrated

14  since the day Agent Byers first approached him about this

15  investigation, he and his family have a check for $50,000

16  made out to the United States District Court Clerk that

17  they will pay at the conclusion of the proceedings today,

18  which will approximately pay 25 percent of the debt owed

19  back immediately.  And then he will certainly make every

20  good faith effort he can to pay the rest back when he is

21  released from whatever sentence the Court feels is

22  appropriate.

23            There is no question in summing up that public

24  corruption is a serious crime.  It's a violation of

25  public trust.  I probably said that three times, and I

1    know the United States is going to say it.  That is a

2    fact.

3            And the Court has to factor that in, and I know

4    the Court's sentence has to be significant enough that if

5    someone else were thinking about committing a similar

6    crime, that if they knew of Mr. Longmeyer's crime, it may

7    make them think twice.

8            That being said, anyone that's here today that

9    looks at this courtroom and looks at all these people

10   that are affected and loved Tim Longmeyer, any sentence

11   would deter them.  Anybody that's out there thinking

12   about doing these things that know, that stops and thinks

13   that they could lose their career, they could become a

14   felon, that they could be humiliated in front of their

15   wife and their children is deterred.

16           He is a good man.  He has done tremendously

17   good things for the people of Jefferson County and the

18   people of the Commonwealth of Kentucky.

19           Even with what we are here for today, on the

20   whole, on the balance, his life is a very good one and

21   has been a very productive one.

22           He will never repeat his crime, and he will

23   never have the opportunity to repeat this crime.  That's

24   all done.  He has literally done everything humanly

25   possible to show his remorse, to show his commitment to

1   rehabilitation, and to assist the United States since he

2   was approached.

3          For that reason, Your Honor, it is -- it is my

4   belief, and it is our request that a lengthy sentence is

5   not necessary to accomplish those goals.

6          We believe 30 months in prison is a significant

7   sentence, but it is not longer than necessary to

8   accomplish the goals of 3553.

9          And I thank you for your time, ma'am.

10          THE COURT:  Thank you.

11          Mr. Boone.

12          MR. BOONE:  Thank you, Your Honor.

13          May it please the Court.

14          I agree with Mr. Butler that Mr. Longmeyer has

15   accomplished a lot of good in his life.  And if we

16   weren't here today and if we weren't discussing a

17   sentence on a federal crime, that's all we would talk

18   about, all the good that he has accomplished for his

19   family and his friends and the community.

20          Unfortunately, we are here today, and we are

21   talking about punishment for a very serious federal

22   crime.

23          In deciding what Mr. Longmeyer's sentence will

24   be for that crime, the Court not only has to consider

25   Mr. Longmeyer's history and characteristics, but also the

1    public's perspective.  The sentence imposed has to be

2    sufficient to reflect the seriousness of the offense and

3    to provide just punishment, to promote respect for the

4    law, and to deter others from committing similar crimes.

5            And the Government's position is that there is

6    no sentence lower than 30 -- or, excuse me, 70 months

7    that would accomplish each of those purposes.  So the

8    United States recommends a sentence of 70 months.

9            Now, to explain why that sentence is necessary

10   I just want to discuss three things.  One is the nature

11   of the crime; two, are some additional pertinent

12   characteristics of Mr. Longmeyer; and, three, the public

13   interest at stake in this case.

14           The crime was uncommonly serious.

15   Mr. Longmeyer pled guilty to a charge covering a one-year

16   period of conduct.  Within that year Mr. Longmeyer used

17   his position and his authority over the Kentucky

18   Employees Health Plan to steer work to a consultant and

19   to solicit $212,500 in kickbacks from that consultant.

20   That is a significant amount of money.  That is almost

21   twice what any public official in the Commonwealth of

22   Kentucky, any state official, makes in a given year.  And

23   that money came right out of the public treasury.

24           The consultant was paid -- if you add up the

25   numbers in the plea agreement, the consultant was paid

1  about $385,000 for that work during that year.

2  Mr. Longmeyer accepted more than half of that in

3  kickbacks.

4          So to state it differently, the consultant

5  could have performed that work for less than half of what

6  he charged.  And Mr. Longmeyer used his position to

7  ensure that that money came out of the Kentucky State

8  Treasury.  While Humana made the payments to the

9  consultant, it was the Kentucky government that

10  reimbursed Humana for the payments.  More than half of

11  the money paid to the consultant went straight -- went

12  from the State Treasury to Mr. Longmeyer.

13          So in considering the nature of Mr. Longmeyer's

14  offense, I would just ask the Court to consider those

15  factors in imposing a sentence.

16          The Court has received dozens of letters from

17  friends and family and acquaintances of Mr. Longmeyer

18  discussing all the good he's accomplished in his life.

19          I don't know Tim Longmeyer as a husband or

20  father or a community activist or parishioner, but these

21  people do, and their opinions are entitled to weight, I

22  grant you that.

23          What I -- what I know, what I do know, is that

24  when the FBI confronted Mr. Longmeyer of evidence of his

25  wrongdoing, he immediately accepted responsibility.  He

1   didn't try to hide anything.  He didn't try to stonewall,

2   he didn't tell us to prove it in court.  He immediately

3   admitted that he had done something wrong.  He

4   immediately recognized that his actions were going to

5   cause serious consequences towards his family, and he

6   immediately stepped up trying to mitigate those

7   consequences as best he could.  And that has to count for

8   something.

9          But at the same time I'll say if that had not

10  been his response, I would be here today seeking a

11  sentence above the guideline range, as I have in other

12  cases like this.

13         All these circumstances, Mr. Longmeyer's

14  immediate acceptance of responsibility, all the good that

15  he's accomplished, I think they point to one of the real

16  tragedies here, and that's that Mr. Longmeyer is someone

17  who knew better.  Of virtually anyone, Mr. Longmeyer knew

18  better.  He's been on this side.  He's advocated for

19  crime victims as a prosecutor.  He's by all accounts a

20  dedicated family man.  He's committed to be a good role

21  model.  He knew better than to do this.

22         But he had this secret life.  He was committing

23  this recurring crime in secret.  It was repetitious.  It

24  wasn't a one-time lapse in judgment.  Over one year he

25  accepted 30 different kickbacks from this consultant.  It

1   was serious, it was repetitive, it was secretive, and

2   when it was discovered it was shocking to the people that

3   know him the best.

4           So I would ask the Court to consider those

5   additional characteristics in imposing a sentence.

6           The sentence also has to address the public's

7   concerns right now.  Mr. Longmeyer was given an enormous

8   amount of public trust.  He was responsible for

9   overseeing the Kentucky Personnel Cabinet.

10          The Court has received a victim impact

11  statement from the personnel cabinet, and from that

12  statement the Court can get a sense of what kind of

13  duties Mr. Longmeyer was responsible for, what kind of

14  trust was given him.  He -- his agency, the agency that

15  supervised him, was responsible for handling some of the

16  most sensitive information pertaining to Kentucky state

17  employees, and it was responsible for managing more than

18  $1.6 billion health plan for state employees and

19  families.  Mr. Longmeyer abused that position to steal

20  from the public.

21          Now, this money will be repaid.  Mr. Longmeyer

22  has agreed immediately to pay $50,000, which is a quarter

23  of his total restitution that he owes.  And that's a

24  great step.

25          Yesterday the Court took a guilty plea from

1  Larry O'Bryan who participated in the scheme with

2  Mr. Longmeyer for a time.  And as a condition of

3  Mr. O'Bryan's plea agreement, which pertains to other

4  years in the scheme, he's agreed to pay over $600,000 in

5  restitution at the time of his sentencing.

6      So the Commonwealth is going to get its money

7  back that was lost in this scheme.  Again, this counts

8  for something, but we have to recognize that

9  Mr. Longmeyer didn't just take the people's money.

10  Mr. Longmeyer broke the people's trust.

11      Right now there are members of the community

12  who are looking at this case, and they see Tim Longmeyer,

13  a family man, former prosecutor, community activist, and

14  they're saying if we can't trust him, if we can't trust

15  Tim Longmeyer, who can we trust?

16      A crime like this is corrosive in that it

17  breeds distrust in the government.  It breeds cynicism.

18  Again, the Court can see that from the personnel

19  cabinet's victim impact statement.

20      Right now they are employees of the personnel

21  cabinet, and I suspect other state agencies, are feeling

22  that distrust.  We're talking about hard-working honest

23  people, who believe that their actions and their motives

24  have been called into question because of these crimes.

25      A significant sentence, a 70-month sentence

1  will make the statement that public officials, like the

2  position Mr. Longmeyer used to hold, are held to the

3  highest standards, and there is no tolerance and no place

4  in our society for abuses of the trust given them.

5          Deterrence is also a concern.  Now, I don't

6  perceive a need for a specific deterrence in this case.

7  Mr. Longmeyer is not going to commit this crime again.

8  As Mr. Butler stated, he won't even have the opportunity.

9  But if there's a lesson to be learned here, he certainly

10  learned it.  But a sentence imposed does need to deter

11  others from similar crimes.

12          Again, if a person like Tim Longmeyer is

13  capable of this crime, then I think we have a lot to

14  worry about.  There are many other people who are subject

15  to the same pressures that Tim Longmeyer was.

16          Mr. Longmeyer in committing this crime did not

17  act from a place of personal greed, at least in the

18  traditional sense.  He didn't use his proceeds to fund a

19  lavish personal lifestyle.

20          Instead, I'll represent that he took over half

21  of the money that he accepted in kickbacks, the cash and

22  the other items of value that are reflected in the plea

23  agreement, he took over half of that money and used it to

24  fund straw campaign contributions.

25          He liked the perception that he could raise

1  money and that he was seen as a team player.  That

2  perception was important to him because it was important

3  to everyone else in his circle.

4          There's been a lot said in our society, a lot

5  said and written about the outsized influence that money

6  has in politics.  I say that the influence of money and

7  politics has given rise to increasing pressure to raise

8  money, contribute money to political campaigns, and this

9  pressure in part is what motivated Mr. Longmeyer to

10  commit this crime.

11         He's not the only state official who was or is

12  faced with this pressure, not by a long shot.  But today

13  here we can't do anything about the influence of money in

14  politics.

15         But with this sentence the Court can send a

16  message.  That message is the need to fund political

17  campaigns never takes priority over a public official's

18  duty to uphold his or her trust and to act in the best

19  interest of the people in every transaction.

20         In conclusion, I would -- I would just

21  reiterate that Mr. Longmeyer's crime was a significant

22  breach of the trust placed in him by the people and the

23  people who worked for him.  To punish that breach of

24  trust and to put others on notice that there is zero

25  tolerance for a crime like this, the United States would

 1  ask the Court to impose a sentence of 70 months.

 2          Thank you.

 3          THE COURT:  In fashioning a sentence this Court

 4  is required to, of course, consult the federal sentencing

 5  guidelines, which are advisory.

 6          The Court is required to consider the

 7  defendant's acceptance of responsibility, among other

 8  things.

 9          It is also required to fashion -- in

10  fashioning a sentence that takes into account all of the

11  factors enumerated in Title 18, United States Code,

12  Section 3553(a).  The statute guides the Court to

13  consider the history and characteristics of a defendant.

14          Both parties have made an argument here before

15  the Court.

16          I find it very interesting because 99 percent

17  of the people who come before this Court have nothing,

18  they have no one, and they don't have anything to lose.

19  They don't have a family, they don't have education, they

20  don't have employment, they have no respect and no

21  prospects.

22          In contrast, this defendant had everything, and

23  he had everything to lose.  Like virtually every

24  white-color criminal who comes before the Court, this man

25  has no criminal history.  That's true in almost every

1    case.

2              He's educated.  He has a law degree.  He had a

3    loving upbringing and a loving and wonderful family.  He

4    has enjoyed good jobs, good pay, and he has earned

5    respect and standing in his community and in this

6    Commonwealth.

7              Yet, he risked it all and lost it all by

8    peddling his official influence for financial gain.  He

9    wanted money based in some part on personal financial

10   gain, but of greater concern and what is a terrible

11   tragedy he wanted money because he wanted a bigger and

12   more influential seat at the political table.

13             I believe that this is a good man, and the

14   Court finds that he is a good man who has made a grievous

15   mistake in violating the laws that he swore to uphold as

16   a public servant and as a lawyer.

17             The Court next goes to the nature and

18   circumstances of the offense.  We look at this kind of

19   offense, and to some extent really the victim impact here

20   is important because this is a public servant who ran a

21   major cabinet in the Commonwealth of Kentucky.  Within

22   that cabinet countless men and women go to work every day

23   for relatively little pay and very little respect, yet

24   they serve the citizens of this Commonwealth, and their

25   statement is compelling in how they feel that their

1   contributions have been diminished by this kind of

2   contact -- conduct.

3          Another issue is the public.  The financial

4   impact of this crime is indeed significant.  But more

5   significant is the negative impact on the public's trust

6   in its government.  We live in a time and in a country

7   where the public is cynical about our government and

8   those who serve it.

9          This defendant's crime further erodes public

10  confidence in government, which must and should function

11  for the benefit of all people, not just a few.

12         And finally this Court is sympathetic in this

13  case and takes into consideration the harm that has been

14  done to this defendant's family and friends.  It goes

15  without saying that among the most severe injuries

16  inflicted by criminal activity, is the loss and

17  humiliation inflicted upon friends and families who have

18  done nothing wrong.

19         While I do not think a lengthy sentence is

20  necessary for treatment, education, or deterrence of this

21  defendant, I think he's done, he's lost almost

22  everything.

23         However, the Court finds that a significant

24  sentence is warranted to reflect the seriousness of this

25  offense, which strikes at the very heart of honest and

1    functioning government.

2          I also find that a significant sentence is

3    required to deter others from peddling their influence to

4    the public's detriment.

5          The seriousness of this crime, coupled with the

6    sophistication and advantages of this defendant, in my

7    view would ordinarily warrant a sentence at the very top,

8    if not above the federal sentencing guidelines.

9          However, in having considered the guideline

10   calculations, all of the relevant motions, and the

11   3553(a) factors, the Court has determined what it deems a

12   fair and just sentence should be to adequately punish the

13   conduct but not more than necessary to effectuate all of

14   the statutory conditions.

15         Therefore, it is the judgment of this Court

16   that the defendant is hereby committed to the custody of

17   the Bureau of Prisons to be in prison for a term of

18   70 months.

19         Now, Mr. Longmeyer, when you are released from

20   prison, you will be placed on supervised release for a

21   term of three years.

22         Within 72 hours of your release from the

23   custody of the Bureau of Prisons, you must report in

24   person to the United States Probation Office in the

25   district to which you are released.

1            Now, while you're on supervised release, you

2    shall not commit another federal, state, or local crime.

3            You must comply with all of the standard

4    conditions that have been adopted by this Court, along

5    with the following.

6            You shall not possess a firearm, destructive

7    device, ammunition, or a dangerous weapon.

8            The drug testing condition ordinarily required

9    by Title 18, United States Code, Sections 3553(a)(5) and

10   3563(a)(5) are suspended.  The Court finds that there is

11   no evidence that you propose -- you possess a risk of

12   substance abuse.

13           In addition, you must comply with the following

14   special conditions.  You shall not incur new credit

15   charges or open lines of credit without approval of your

16   probation officer unless you are in compliance with any

17   payment plan that might have been set up for you with

18   respect to your financial responsibilities.

19           You must provide your probation officer with

20   access to any financial information that they may request

21   of you while you have a financial obligation to the

22   United States.

23           Restitution in the amount of $203,500 is

24   mandatory in this case and is due immediately.  The

25   victim is the Commonwealth of Kentucky.

1          Any outstanding balance owed upon the

2    commencement of incarceration must be paid in accordance

3    with the Federal Bureau of Prisons Inmate Financial

4    Responsibility Program.

5          Any outstanding balance owed upon the

6    commencement of supervision will be paid according to the

7    schedule that will be set by subsequent orders of this

8    Court.

9          Now, the victim's recovery is limited to the

10   amount of their total loss, and your liability for

11   restitution would cease if it's recovered from another

12   source.

13         The Court finds, however, that you don't have

14   the ability to pay interest on the restitution, and it's

15   ordered that the interest requirement will be waived.

16         Given the large amount of restitution imposed

17   in this case the Court finds that the defendant will not

18   have the ability to pay a fine in addition to

19   restitution; therefore, one will not be imposed.

20         It is, however, ordered that the defendant

21   shall pay the United States a special assessment of $100

22   that will be due immediately.

23         Is there any legal reason that sentence should

24   not be imposed as stated?

25         MR. BOONE:  No, Your Honor.

1          THE COURT:  For the defense?

2          MR. BUTLER:  No, ma'am.

3          THE COURT:  Yes.

4          MR. BUTLER:  It would be our request to make a

5    recommendation for the federal camp in Montgomery,

6    Alabama, if we could, Your Honor.

7          THE COURT:  I will make that recommendation.

8    Sometimes the Bureau of Prisons follows my

9    recommendations, sometimes they don't, but I will be

10   happy to make that recommendation.

11         MR. BUTLER:  Thank you, Judge.

12         THE COURT:  Very well.  I believe that this

13   defendant has waived some or all of his rights to appeal.

14   Nevertheless, I will have the clerk of the Court read him

15   some information about his appeal rights.

16         Mr. Meyer and Mr. Butler, I know you will keep

17   him well advised; but, nevertheless, consistent with the

18   rules I will have him advised.

19         I will give you a copy of this information,

20   Mr. Longmeyer, to keep for your records and ask that you

21   sign another copy and return it to the Court for its

22   record.

23         Ms. Connor.

24         THE CLERK:  Yes, Your Honor.

25         Criminal defendants have the right to appeal

1   their case to the Sixth Circuit Court of Appeals, which

2   on proper appeal will review the case and determine

3   whether there has been an error of law.

4          However, a defendant may waive those rights as

5   part of a plea agreement, and you have entered into a

6   plea agreement in which you have waived your right to

7   appeal the guilty plea, conviction, and sentence.

8          Such waivers are generally enforceable, but if

9   you believe the waiver is unenforceable, you can present

10  that theory to the appellate court.

11         If you do not have sufficient funds to pay for

12  the appeal, you have a right to apply for leave to appeal

13  in forma pauperis, which means you may appeal without

14  paying for it.

15         If you are without the services of an attorney

16  and desire to appeal, upon request the clerk of the Court

17  shall prepare and file forthwith a notice of appeal on

18  your behalf.

19         This notice of appeal must be filed within

20  14 days from the date of entry of the written judgment.

21         If you do not have sufficient funds to employ

22  an attorney, you may request appointment of counsel to

23  prosecute the appeal for you.

24     (Whereupon, the defendant, Timothy M. Longmeyer,

25  signs the form.)

1          THE COURT:  What says the United States with

2    respect to this defendant reporting for service of his

3    sentence?

4          MR. BOONE:  Your Honor, we have no objection to

5    Mr. Longmeyer self-surrendering.

6          THE COURT:  Very well.

7          The record will reflect that the defendant and

8    his counsel executed the acknowledgment form.  It will be

9    filed in the record.

10          The Court finds that this defendant has

11    been completely compliant with all of the conditions of

12    his bond.  And as there is no objection from the

13    United States, the Court will permit him to

14    self-surrender for service of his sentence.

15          Ms. Connor, could you find a date in the middle

16    of the week, about 60 days from today's date?

17          Will that be sufficient time?

18          PROBATION OFFICER:  Yes, Your Honor, I believe

19    it would.

20          THE COURT:  All right.  While the clerk is

21    finding a date for us, Mr. Longmeyer, I want to advise

22    you that, of course, all of your current conditions of

23    bond will continue to apply, but more importantly if you

24    fail to surrender for service of your sentence at the

25    time and place designated, that is a separate federal

1    crime for which you could be prosecuted.

2              So it's important that you report where and

3    when you're supposed to.  I know the probation office and

4    your lawyers will keep you well advised.

5              The Court will permit the defendant to

6    self-surrender before 2:00 p.m. on December 7th, 2016.

7              Is there anything further to come before the

8    Court?

9              Mr. Boone?

10             MR. BOONE:  No, Your Honor.  Thank you.

11             THE COURT:  Mr. Butler, anything further?

12             MR. BUTLER:  Your Honor, may we -- Mr. Boone

13   and I approach briefly?

14             THE COURT:  You may.

15        (Whereupon, a bench conference was had with the

16   Court and Counsel, on the record, out of the hearing of

17   the open court, and is under seal until further orders of

18   the Court; and the Sentencing Hearing proceedings

19   continued, as follows.)

20             THE COURT:  Anything further, Mr. Butler?

21             MR. BUTLER:  No, Your Honor.  Thank you.

22             THE COURT:  All right.  We have another matter.

23             Yes, Ms. Anderson.

24             MS. ANDERSON:  Nothing, Your Honor.

25             THE COURT:  All right.  We have another matter

1   scheduled, but we'll take a brief recess before

2   proceeding with that case.

3        (Whereupon, the Sentencing Hearing proceedings

4   concluded at 3:20 p.m.)

5                    C E R T I F I C A T E

6        I, Peggy W. Weber, certify that the foregoing is a

7   correct transcript from the record of proceedings in the

8   above-entitled matter.

9

10

    November 1, 2016                s/Peggy W. Weber

11       DATE                       PEGGY W. WEBER, RPR

12

13

14

15

16

17

18

19

20

21

22

23

24

25